IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IMO'S FRANCHISING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:20-cv-1222 |
| | ) |
| KANZOUA, INC. d/b/a Gas Mart 26, | ) |
| a Missouri Corporation, MIKE JABBAR, | ) |
| ADAM JABBAR, AMIRA JABBAR, | ) |
| and MIRVET JABBAR, | ) |
| | ) |
| Defendants. | ) |

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Imo's Franchising, Inc. ("Imo's"), by and through its undersigned attorneys, hereby brings the following Verified Complaint for Damages and Injunctive Relief against Defendants Kanzoua, Inc. d/b/a Gas Mart 26, Mike Jabbar, Adam Jabbar, Amira Jabbar, and Mirvet Jabbar, and in support thereof alleges as follows:

**THE PARTIES**

1.  Plaintiff Imo's is, and at all relevant times was, a Missouri corporation with its principal place of business in St. Louis, Missouri. Imo's is a franchisor and licensor of Imo's pizza franchises, which sell St. Louis-style pizza, which is a thin cracker crust covered with edge-to-edge toppings and covered with Provel® cheese and then cut into squares. There are more than 100 franchised, licensed and corporate Imo's locations in Missouri, Illinois and Kansas. The original Imo's Pizza concept was established by Ed and Margaret "Margie" Imo, the originators of St. Louis-style pizza who opened a pizza parlor in The Hill neighborhood in St. Louis in 1964. They began franchising the brand in 1985. Imo's has a high level of brand recognition, and its franchisees and licensees benefit from Imo's extensive advertising,

1

marketing and iconic name it has established.  Imo's was recently recognized on the Food Network's list of top regional pizza styles in the country.

2. Defendant Kanzoua, Inc. d/b/a Gas Mart 26 ("Defendant") is, and at all relevant times was, a Missouri corporation with its registered address in Clayton, Missouri and doing business in St. Louis, Missouri.  Defendant is a former licensee of Imo's.

3. Defendants Mike Jabbar, Adam Jabbar, Amira Jabbar, and Mirvet Jabbar ("Guarantors") are guarantors of Defendant's obligations under its Agreement with Imo's (described below).  Guarantors are Missouri residents.  Mike Jabbar is the managing member of Defendant.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 in that two of the claims herein arise under federal law (Counts V and VI), and the Court has supplemental jurisdiction over the remaining claims.

5. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

**A.     The Parties' Agreements and Imo's Trademarks.**

6. On May 15, 2014, Imo's and Defendant entered into an In-Store Service Station License Agreement (the "Agreement") for Defendant to operate an Imo's in-store service station pizza restaurant (the "Facility") at 1110 Salisbury, St. Louis, Missouri 63107 (the "Location"). The Facility is located inside a BP-branded gasoline station at Interstate 70 and Salisbury Street. *See* Exhibit A to the Declaration of Kimberly S. Myers ("Myers Dec."), which is attached hereto as **Exhibit A**.  The Location includes a counter where customers can order and pick up freshly-

baked pizzas prepared in ovens on site. Mike Jabbar, the managing member of Kanzoua, signed the Agreement on behalf of Kanzoua.

7. Also on May 15, 2014, Guarantors entered into a Guarantee and Assumption of Obligations Agreement ("Guarantee") with Imo's under which they personally and unconditionally guaranteed that Defendant would perform all of the agreements and covenants in the Agreement and that they would be personally bound by, and personally liable for, the breach of every provision in the Agreement, including the non-competition provisions, other restrictive covenants and nondisclosure provisions, and provisions in the Agreement relating to trademarks. Myers Dec. at Exhibit B. These guarantees survive the expiration or termination of the Agreement. *Id.* The Guarantors also agreed that they would pay Imo's legal costs and expenses, including attorneys' fees, if Imo's had to enforce the Guarantee. *Id.*

8. In the Agreement, Defendant acknowledged and agreed that Imo's had developed and owns "a unique specially developed method of operating a restaurant specializing in pizza and sandwiches, and offering other food products and providing carry-out, and limited seating under the name and service mark "Imo's" using certain recipes, formulas, food preparation procedures and methods. This includes any of the methods, procedures, recipes, menu items, etc. as they may be changed, improved, or modified and further developed by [Imo's] from time to time (the "System")." Myers Dec., Exh. A at ¶ 1.

9. Defendant also acknowledged the uniqueness of the Imo's System and that Imo's was making its "knowledge, know-how, and expertise available" to the licensee for the sole purpose of operating an Imo's at the Location. *Id.* at ¶ 21. Defendant agreed "that it would be an unfair method of competition to use or duplicate or to allow others to use or duplicate any of

3

the knowledge, know-how and expertise received by you for any reason other than for the operation" of the Imo's at the Location.  *Id.*

10. Imo's shared that knowledge, know-how and expertise with Defendant as part of three weeks of on-site training, which included selecting the correct pizza ovens and equipment to buy, how to calibrate its ovens, how to operate a pizza business in a small kitchen, and how to make an Imo's St. Louis-style pizza, among other things.  As part of the training, Imo's provided Defendant with a copy of its confidential Operations Manual and recipes.

11. When Defendant signed the agreement, it acknowledged that its projected revenue generated from the Imo's would not exceed 20% of its gross revenues from its existing business combined with the Imo's business and that Defendant could derive 80% of its income independent of the relationship with Imo's.  Myers Dec. at Exh. A, ¶ 30(a).

12. The initial term of the Agreement was from May 15, 2014 to May 15, 2019. Myers Dec. at Exh. A at ¶ 4.

13. Although the term of the Agreement expired by its terms on May 15, 2019, Defendant continued to operate an Imo's at the Facility at the Location after May 15, 2019 on a month-to-month basis.

14. After the term of the Agreement expired on May 15, 2019, Defendant continued to use Imo's Marks, serve Imo's pizza, and pay licensing fees and advertising fees to Imo's pursuant to the Agreement.

15. Defendant Mike Jabbar, the managing member of Kanzoua, continues to operate another Imo's location in Imperial, Missouri.

4

### B. Termination of the Agreement.

16. On April 22, 2020, Imo's informed Defendant that it was terminating the Agreement between the parties effective July 31, 2020. Myers Dec. at Exhibit C.

17. The Agreement prohibited Defendant from representing to the public or holding itself out as a present or former licensee of Imo's, and to "permanently stop using any confidential methods, procedures, secret recipes, and techniques associated with the System and Marks." *Id.* at Exh. A, ¶ 21(d).

18. Defendant also agreed that for a period of eighteen (18) months after the expiration or termination of the Agreement for any reason, it would not:

> directly or indirectly, through yourself or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location.

*Id.* at ¶ 21(c).

### C. Defendant's Conduct After The Agreement Was Terminated.

19. After Imo's terminated the Agreement on July 31, 2020, Defendant has continued to sell pizza at the same Facility and Location when it was an Imo's licensee.

20. When Imo's terminated the Agreement effective July 31, 2020, Kanzoua no longer paid licensing and advertising fees.

21. Shortly after Imo's learned of Defendant's conduct, Imo's sent Defendant a cease and desist letter, dated August 7, 2020, demanding that Defendant immediately cease, among other actions, using Imo's trademarks, selling pizzas of any kind, using Imo's confidential

methods and system, or representing to the public that it was a former licensee of Imo's.  Myers Dec. at Exhibit D.

22. Defendant had been advertising its Imo's pizza on an exterior sign using Imo's trademarks, which it eventually changed to say "Same Taste.  Different Name" called Melanos Pizza, but it continued to advertise its pizza with signage that contained similar characteristics as Imo's trademarks.



Defendant eventually painted over or marked out the "Same Taste.  Different Name" slogan and then eventually covered the sign with a tarp after several demands from Imo's.

23. Defendant has continued, however, to sell pizza at the Facility.  *See* Declaration of Donte Tamprateep ("Tamprateep Dec."), attached hereto as **Exhibit B**, at ¶¶ 1-5.

24. On August 19, 2020, Kimberly Myers, General Counsel for Imo's, called the 314-621-2090 telephone number at the Facility, and asked the person answering the telephone if the Facility was still an Imo's.  Myers Dec. at ¶ 3.  The person who answered the telephone at Defendant's Facility said that "It's the same thing, we just changed the name."  *Id.*

6

25. On September 3, 2020, Kimberly Myers again called the 314-621-2090 telephone number at the Facility and asked "Is this Imo's Pizza?" Myers Dec. at ¶ 4. The person who answered the telephone at the Facility said "Yes, we changed the name, its Melano's Pizza now." *Id.* The person who answered the telephone at the Facility also informed Ms. Myers that she would have to walk in and order pizza at the Facility. *Id.* Ms. Myers then asked "Do you still sell Imo's pizza?" *Id.* The person who answered the telephone at the Facility said "Yes, it's the same thing, we just changed the name." *Id.*

26. On September 3, 2020, Donte Tamprateep, Corporate Counsel for Imo's, went to the Facility and bought a pizza that is similar in appearance to an Imo's pizza. Tamprateep Dec. at ¶¶ 1-5.

27. Defendant Mike Jabbar, Kanzoua's managing member, is also the managing member of the entity that continues to operate another Imo's location in Imperial, Missouri. Kanzoua still has access to Imo's confidential operations manual and recipes. After Imo's notified Kanzoua that it was terminating the Agreement, the manager at the Imperial location logged on to Imo's online system where the confidential operations manual and recipes are located. Although Imo's has had the on-line system for two years, according to Imo's records this was the first time that anyone associated with Jabbar's locations had logged on to the system.

## COUNT I
**(Breach of Contract – Restrictive Covenant – Against All Defendants)**

28. Imo's repeats the foregoing allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

29. Defendant agreed that for a period of eighteen (18) months after the expiration or termination of the Agreement for any reason, it would not:

7

> directly or indirectly, through yourself or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location.

Myers Dec. at Exh. A, ¶ 21(c).

30. Defendant has breached and continues to breach this provision by selling pizza at the same Facility and Same Location at which it sold Imo's pizza during the term of the Agreement.

31. Indeed, when a person at the Facility at the Location was asked if it was still an Imo's, that person responded that "It's the same thing, we just changed the name." Myers Dec. at ¶¶ 3, 4.

32. As a direct result of Defendant's conduct, Imo's has lost and/or is imminently threatened with the loss of customers, business, and goodwill, and customers, business, and goodwill will continue to be wrongfully diverted to Defendant's pizza business at the Facility and Location if immediate, preliminary, and permanent injunctive relief is not granted.

33. Imo's has performed all of its obligations under the Agreement.

34. Defendant's conduct has also caused, and will continue to cause, damages to Imo's.

WHEREFORE, Imo's respectfully requests that the Court enter a temporary restraining order and preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

8

1.      from representing to the public (directly or by implication) that they are associated with Imo's, remain an authorized Imo's licensee, or that they are selling any pizza with the "same taste" as Imo's;

2.      from violating the Agreement by either directly or indirectly, through themselves or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location as defined in the Agreement.

WHEREFORE, Imo's also respectfully requests damages against Defendants in an amount to be determined at trial, including compensatory and punitive damages, plus pre-judgment and post-judgment interest on the amount awarded to Imo's, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT II
**(Breach of Contract – Use of Confidential Information – Against All Defendants)**

35.     Imo's repeats the foregoing allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

36.     Defendant agreed that, after expiration or termination of the Agreement, it would not directly or indirectly engage in any food business that sold any type of pizza within the Facility and Location using Imo's System and Marks, not represent to the public or hold itself out as a present or former licensee of Imo's, stop using any confidential methods, procedures, secret recipes, and techniques associated with Imo's System and Marks, and follow Imo's instructions to de-identify from Imo's System. Myers Dec. at Exh. A, ¶ 21(d).

37. Defendant has breached and continues to breach paragraph 21(d) of the Agreement by selling pizza at the same Facility and same Location at which it sold Imo's pizza during the term of the Agreement, and using Imo's confidential methods, procedures, secret recipes, and techniques to make its pizza that Defendant claims has the "same taste" as Imo's.

38. Indeed, when a person at the Facility at the Location was asked if it as still an Imo's, that person responded that "It's the same thing, we just changed the name." Myers Dec. at ¶¶ 3, 4.

39. As a direct result of Defendant's conduct, Imo's has lost and/or is imminently threatened with the loss of customers, business, and goodwill, and customers, business, and goodwill will continue to be wrongfully diverted to Defendant's pizza business at the Facility and Location if immediate, preliminary, and permanent injunctive relief is not granted.

40. Imo's has performed all of its obligations under the Agreement.

41. Defendant's conduct has also caused, and will continue to cause, damages to Imo's.

WHEREFORE, Imo's respectfully requests that the Court enter a temporary restraining order and preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1. from representing to the public (directly or by implication) that they are associated with Imo's, remain an authorized Imo's licensee, or that they are selling any pizza with the "same taste" as Imo's;

2. from violating the Agreement by either directly or indirectly, through themselves or through corporations, partnerships, limited liability companies, trusts, associations, joint

ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location as defined in the Agreement.

WHEREFORE, Imo's also respectfully requests damages against Defendants in an amount to be determined at trial, including compensatory and punitive damages, plus pre-judgment and post-judgment interest on the amount awarded to Imo's, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT III
### (Breach of Contract – Personal Guarantee Against Defendants Mike Jabbar, Adam Jabbar, Amira Jabbar, and Mirvet Jabbar)

42. Imo's repeats the foregoing allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

43. Defendants Mike Jabbar, Adam Jabbar, Amira Jabbar, and Mirvet Jabbar executed the Guarantee wherein they agreed to "be personally and unconditionally bound by each and every undertaking, agreement and covenant set forth in the Agreement." including, but not limited to, the non-competition provisions and the provisions relating to the Marks.  Myers Dec. at Exh. B.

44. Defendant Guarantors are liable and responsible for the breaches and claims set forth in this Complaint.

45. Defendant Guarantors have not remedied any of the breaches set forth in this Complaint, and they have failed to abide by all of the covenants, representations, and agreements set forth in the Agreement and/or Guarantee.

11

46. Defendant Guarantors' breach of the Agreement and Guarantee has caused and continues to cause Imo's damages.

WHEREFORE, Imo's respectfully requests that the Court enter a temporary restraining order and preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1. from representing to the public (directly or by implication) that they are associated with Imo's, remain an authorized Imo's licensee, or that they are selling any pizza with the "same taste" as Imo's;

2. from violating the Agreement by either directly or indirectly, through themselves or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location as defined in the Agreement.

WHEREFORE, Imo's also respectfully requests damages against Defendants in an amount to be determined at trial, including compensatory and punitive damages, plus pre-judgment and post-judgment interest on the amount awarded to Imo's, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT IV
### (Violation of the Missouri Uniform Trade Secrets Act – Against All Defendants)

47. Imo's repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

48. The confidential information of Imo's to which Defendants were given access, including Imo's confidential methods, procedures, secret recipes, and techniques to make its pizza, constitutes trade secrets within the meaning of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.453(4).  Such confidential information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.  Imo's has made reasonable efforts to maintain the secrecy of such confidential information.

49. Upon information and belief, Defendants are using Imo's confidential methods, procedures, secret recipes, and techniques to make pizza at the Facility and Location.  In fact, when a person at the Facility at the Location was asked if it as still an Imo's, that person responded that "It's the same thing, we just changed the name."  Myers Dec. at ¶¶ 3, 4.

50. Defendants' conduct in willfully misappropriating and using the trade secrets of Imo's by improperly using and disclosing such trade secrets in breach of a duty to maintain the secrecy of such trade secrets after their association with Imo's had been terminated, is outrageous because of Defendants' evil motive and/or reckless indifference to the rights of others.

51. Defendants' misappropriation of the trade secrets of Imo's entitles Imo's to injunctive relief and punitive damages.

WHEREFORE, Imo's respectfully requests that the Court enter a temporary restraining order and preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1. from representing to the public (directly or by implication) that they are associated with Imo's, remain an authorized Imo's licensee, or that they are selling any pizza with the "same taste" as Imo's;

2. from violating the Agreement by either directly or indirectly, through themselves or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location as defined in the Agreement.

WHEREFORE, Imo's also respectfully requests damages against Defendants in an amount to be determined at trial, including compensatory and punitive damages, plus pre-judgment and post-judgment interest on the amount awarded to Imo's, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT V
**(Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) – Against All Defendants)**

52. Imo's repeats the allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

53. The confidential information of Imo's to which Defendants were given access, including Imo's confidential methods, procedures, secret recipes, and techniques to make its pizza, constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3). Such confidential information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons who

can obtain economic value from its disclosure or use.  Imo's has made reasonable efforts to maintain the secrecy of such confidential information.

54.     Imo's confidential methods, procedures, secret recipes, and techniques to make its pizza relate to a product or service used in, or intended for use in, interstate or foreign commerce, *i.e.* Imo's pizza.

55.     Upon information and belief, Defendants are using Imo's confidential methods, procedures, secret recipes, and techniques to make pizza at the Facility and Location.  In fact, when a person at the Facility at the Location was asked if it as still an Imo's, that person responded that "It's the same thing, we just changed the name."  Myers Dec. at ¶¶ 3, 4.

56.     Defendants' conduct in willfully misappropriating and using the trade secrets of Imo's by improperly using and disclosing such trade secrets in breach of a duty to maintain the secrecy of such trade secrets after their association with Imo's had been terminated, is outrageous because of Defendants' evil motive and/or reckless indifference to the rights of others.

57.     Defendants' misappropriation of the trade secrets of Imo's entitles Imo's to injunctive relief and punitive damages.

WHEREFORE, Imo's respectfully requests that the Court enter a temporary restraining order and preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

1.      from representing to the public (directly or by implication) that they are associated with Imo's, remain an authorized Imo's licensee, or that they are selling any pizza with the "same taste" as Imo's;

2. from violating the Agreement by either directly or indirectly, through themselves or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location as defined in the Agreement.

WHEREFORE, Imo's also respectfully requests damages against Defendants in an amount to be determined at trial, including compensatory and punitive damages, plus pre-judgment and post-judgment interest on the amount awarded to Imo's, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNT VI
### (False Association in Violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a) – Against Defendant)

58. Imo's repeats the foregoing allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

59. On information and belief, including Defendant's response to a telephone inquiry as to whether Defendant's Facility "was still an Imo's," Defendant, a former Imo's franchisee, stated through its employees that "It's the same thing, we just changed the name," Defendant is falsely or misleadingly representing to customers and potential customers that its pizza is the same as Imo's pizza, is made using the Imo's proprietary recipe, and/or that Defendant is still associated, affiliated, or connected with, or sponsored or approved by, Imo's.

60. In this way, Defendant, without Imo's authorization or permission and indeed over its express objection, is using the Imo's mark or name, and/or making a false or misleading

16

representation of fact, in commerce, in connection with its sale of pizzas, that is likely to cause confusion, or to cause mistake, or to deceive as to Defendant's affiliation, connection, or association with Imo's, or as to the origin of Defendant's pizzas or related commercial activities, or Imo's sponsorship or approval thereof.

61. Imo's has been or is likely to be injured as a result of such usage and/or false or misleading representations of fact.

62. Defendant's conduct is willful, intentional, and designed to trade without authorization on Imo's brand recognition, reputation for quality pizza, and good will.

63. Defendant's unauthorized conduct is the proximate cause of damage, harm or injury to Imo's and is greatly and irreparably damaging to Imo's in the form of: (i) loss of sales revenue from diverted sales; (ii) interference with Imo's ability to exploit its rights, control its mark and trade name and control its reputation; (iv) likely confusion in the marketplace as to Defendant's association with Imo's and the origin of the pizzas sold by Defendant; and (v) impairment of the goodwill Imo's has in its Imo's mark and trade name, and, if not enjoined, will continue to cause irreparable damage to the rights of Imo's in its Imo's mark and trade name and to the business, reputation and goodwill of Imo's.

64. Imo's has no adequate remedy at law.

65. Imo's is entitled to recover from Defendant its profits, an accounting and disgorgement of all of Defendant's profits, all damages that Imo's has sustained from Defendant's infringement, including the cost of corrective advertising, as well as prejudgment interest, and the costs associated with this action pursuant to 15 U.S.C. § 1117.

66. Because Defendant's conduct is willful, Imo's is entitled to enhanced damages and reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Imo's respectfully requests that the Court, in the alternative to the injunctive relief requested above:

1. enter a temporary restraining order and preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendants, their officers, agents, servants, employees, attorneys:

   (a) from making false claims of association with Imo's in connection with marketing, promoting and selling pizzas or related products or services;

   (b) from representing to the public (directly or by implication) that they are associated with Imo's or that Defendant's pizza is the same as Imo's pizza, is made using the Imo's proprietary recipe, and/or that Defendant is still associated, affiliated, or connected with, or sponsored or approved by, Imo's;

WHEREFORE, Imo's also respectfully requests damages against Defendants in an amount to be determined at trial, including compensatory, enhanced, and punitive damages, plus pre-judgment and post-judgment interest on the amount awarded to Imo's, for its attorneys' fees and the costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

Dated: September 9, 2020                                GREENSFELDER, HEMKER, & GALE, P.C.

                                                           By: /s/ Dawn M. Johnson
                                                           Dawn M. Johnson, E.D. Mo. 41991
                                                           dmj@greensfelder.com
                                                           John E. Petite, E.D. Mo. 44404
                                                           jep@greensfelder.com
                                                           David Simmons, E.D. Mo. 53801
                                                           ds@greensfelder.com
                                                           10 South Broadway, Suite 2000
                                                           St. Louis, Missouri 63102
                                                           Telephone: (314) 241-9090
                                                           Facsimile: (314) 345-5465

                                                *Attorneys for Plaintiff Imo's Franchising, Inc.*

1872503

## VERIFICATION

I, Kimberly S. Myers, of lawful age, declare and state that I have read the above and foregoing Verified Complaint for Damages and Injunctive Relief against Defendants Kanzoua, Inc. d/b/a Gas Mart 26, Mike Jabbar, Adam Jabbar, Amira Jabbar, and Mirvet Jabbar and know the contents thereof, and that such allegations are true according to the best of my knowledge and belief.

Executed on September 9, 2020, at St. Louis, Missouri.

_____
Kimberly S. Myers