UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IMO'S FRANCHISING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-1222 SEP |
| | ) |
| KANZOUA, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**<u>Memorandum and Order</u>**

This matter is before the Court on Plaintiff Imo's Franchising, Inc.'s ("Imo's Pizza") Motion for Temporary Restraining Order and Request for Preliminary Injunction (Doc. [2]).  For the reasons stated below, Imo's Pizza's request for a temporary restraining order is granted in part.

**I.      Background**

This case involves a beloved regional delicacy, St. Louis-style pizza.  Although more people may be familiar with the iconic pizza styles associated with places like New York, Chicago, and New Haven, St. Louisans take great pride in their own home-grown style of pizza: a thin, almost cracker-like crust, piled edge-to-edge with toppings, usually completed by a kind of cheese that, to best of the Court's knowledge, was invented for this purpose and may exist nowhere but in St. Louis.  Like every home-grown delicacy, St. Louis pizza has fanatics and foes, and St. Louis locals regularly compare their preferred purveyors.

In this case, one of the most recognizable of those establishments, Imo's Pizza, entered into a licensing agreement (the "Agreement") with Defendant Kanzoua, Inc. ("Kanzoua"), a gas station/convenience store, which allowed Kanzoua to operate an Imo's Pizza restaurant at its St. Louis location (located at 1110 Salisbury, St. Louis, MO) for a term of five years.  Doc. [1] ¶¶ 6-12.  After the five-year term ended, the parties renewed the Agreement's terms on a monthly basis until July of 2020, when Imo's Pizza terminated the Agreement.  *Id*. ¶¶ 13, 16.

According to Imo's Pizza, the Agreement provides that in the event of termination, Defendant shall (a) stop selling pizza of any kind for a period of 18 months and (b) stop associating itself with Imo's Pizza.  *Id*. ¶¶ 17-18.  Imo's Pizza alleges that despite these terms, Kanzoua continues to sell pizza, hold itself out as an Imo's-affiliated restaurant, and use Imo's

1

Pizza's confidential information. *Id*. ¶¶ 19-27.  Specifically, Imo's Pizza alleges Kanzoua now operates a pizza restaurant called Melanos Pizza. *Id*. ¶ 22.  Imo's Pizza has produced evidence that Defendant has claimed that Melanos Pizza offers the "same taste, different name" relative to the pizza sold in the same location under the Imo's Pizza license. *Id*.  Imo's Pizza has also adduced evidence that Defendant's employees tell potential customers that the location still sells the same pizza it offered when it was an Imo's Pizza restaurant; they "just changed the name." *Id*. ¶ 24-25.

Imo's Pizza filed a Complaint in this Court alleging breach of the Agreement (Counts I, II, and III), violation of the Missouri Uniform Trade Secrets Act (Count IV), violation of the Defend Trade Secrets Act (Count V), and violation of the Lanham Act (Count VI).  Imo's Pizza moves for a TRO based on Counts I and II of its Complaint.  Doc. [2].  Kanzoua opposes the Motion.  Doc. [13].  On September 14, 2020, the Court held a hearing on the Motion at which both parties were present.  Having heard each side's arguments and considered their briefing, the Court is prepared to grant Imo's Pizza's Motion in part.[1]

## II.   Standard of Review

In determining whether to issue a TRO, the Court must consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the harm that granting the injunction will inflict on other parties; (3) the probability that movant will prevail on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also City of Berkeley, Missouri v. Ferguson-Florissant Sch. Dist.*, No. 4:19CV168 RLW, 2019 WL 1558487, at *2 (E.D. Mo. Apr. 10, 2019).  "While 'no single factor is determinative,' the probability of success factor is the most significant."  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase*, 640 F.2d at 113 (internal citation omitted)).  Therefore, the Court will begin its analysis there.

## III.  Discussion

### A.  *Imo's Pizza's likelihood of success on the merits*

Imo's Pizza has demonstrated that it is likely to succeed on Count I of its Complaint, which asserts Kanzou violated paragraph 21(c) of the Agreement by continuing to sell pizza at its St. Louis location.  Doc. [1] ¶ 30.  Paragraph 21(c) provides that for 18 months Kanzoua shall not:

> directly or indirectly, through [itself] or through corporations, partnerships, limited liability companies, trusts, associations, joint ventures, unincorporated businesses, or otherwise perform any services for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any

---

[1] Although Imo's Pizza sought injunctive relief under Count II of its Complaint—asking the Court to enjoin Kanzoua "from representing to the public (directly or by implication) that they are associated with Imo's, remain an authorized Imo's licensee, or that they are selling any pizza with the 'same taste' as Imo's," Doc. [1] at 10—Kanzoua represented at the hearing that it is not currently engaging in any of the aforementioned activities, which Imo's Pizza did not contest.  Therefore, the Court sees no reason for prospective relief and denies that portion of Plaintiff's Motion as moot.  Of course, the Court remains open to considering evidence and argument relating to Count II at the preliminary injunction hearing.

2

> interest based on profits or revenues of any food business which sells any type of pizza anywhere within the Facility or at the Location.

Doc. [1-8] at 8.

Imo's Pizza interprets this provision as prohibiting Kanzoua from selling any pizza at its location for a period of 18 months. Doc. [3] at 11. Kanzoua argues that the provision is not so broad.[2] According to Kanzoua, paragraph 21(c) provides only that Kanzoua may not affiliate itself with any "food business" that sells pizza. Doc. [13] at 6. Kanzoua avers that the provision was intended to restrict Kanzoua from entering into a similar agreement with another pizza franchisor; it does not, Kanzoua maintains, "prevent Kanzoua from the mere act of selling pizza . . . ," because the gas station Kanzoua operates is not itself a "food business." *Id*. The Court agrees with Imo's Pizza.

"Food business" is not a defined term in the Agreement. In the absence of specified definitions, contractual terms "are given their plain, ordinary, and usual meaning." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). At the hearing, the parties and the Court engaged in a lengthy colloquy about the nature of a "food business," but the precise contours of the concept remain elusive. Nevertheless, on the record before the Court, Kanzoua appears to be "engag[ing] in" a "food business which sells any type of pizza"—i.e., Melanos Pizza—within the ordinary meaning of those contractual terms.

Kanzoua conceded at the hearing and in its briefing that paragraph 21(c) prohibited it from operating at its location a pizza restaurant affiliated with another pizza franchise. Doc. [13] at 7. But the Court sees nothing in paragraph 21(c) that limits its application to only "entities similar to Imo's [Pizza] . . . ." *Id*. Moreover, that interpretation seems to run counter to the principles underlying non-compete clauses. *See* W. Michael Graner, *Franchising & Distrib. Law & Prac.* § 8:53 (West 2019-20) (explaining that companies have a legitimate interest in protecting "goodwill, including the company's reputation, brand recognition and customer base"). Imo's Pizza's reputation, goodwill, and brand recognition are just as threatened where, as here, one of its former licensees de-affiliates but continues to make a similar product under their own name as they are when the same former Imo's licensee enters a new license with an independent pizza manufacturer that has its own distinctive recipes and branding. In fact, it seems to the Court that the risks of confusion, reputational harm, and muddled brand recognition are higher in a situation like this case than when a former licensee switches entirely to another recognizable rival pizza brand. Therefore, there is no reason to think that a company like Imo's Pizza meant anything than what the plain text of the provision indicates—that a former licensee may not "directly or indirectly . . . *engage in* or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based on profits or revenues of *any food business which sells any type of pizza* anywhere within the Facility or at the Location." Doc. [1-8] at 8 (emphasis added).

Because paragraph 21(c) prohibits Kanzoua from selling pizza at its location for a period of 18 months, and because Kanzoua has been selling pizza at its location, the Court finds Imo's Pizza has shown a likelihood of success on the merits of Count I.

---

[2] Kanzoua has not challenged the enforceability of either the Agreement or paragraph 21(c), so the Court will assume each is valid and enforceable.

### B. *Threat of irreparable harm to Imo's Pizza*

Kanzoua argues there is no threat of irreparable harm to Imo's Pizza because Imo's Pizza has not identified any actual customers who have mistaken Melanos Pizza for Imo's Pizza. Doc. [13] at 13. It further argues that any harm to Imo's Pizza can be remedied in the form of damages. *Id.* Neither argument is convincing.

First, Imo's Pizza is not required to prove that customers have in fact been drawn to Melanos Pizza under the belief that it is affiliated with Imo's Pizza. *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71, 75 (Mo. banc 1985) ("The Court of Appeals apparently considered that the plaintiff had to show an actual attempt to solicit its customers. This is not a requirement of the law. If it were, a plaintiff such as this one, who filed suit very quickly after the apparent violation occurred, would be disadvantaged."). Rather, as the Eighth Circuit has explained, breach of a non-compete agreement typically amounts to a per se irreparable injury. *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984); *see also Express Scripts, Inc. v. Lavin*, NO. 17CV01423 HEA, 2017 WL 2903205, at *8 (E.D. Mo. July 7, 2017) ("The mere violation of a valid non-compete agreement can support an inference of the existence of a threat of irreparable harm.") (internal quotation marks and citation omitted); *Church Mut. Ins. Co. v. Sands*, No. 14–CV–3119–S–DGK, 2014 WL 3907831, at *3 (W.D. Mo. Aug. 11, 2014) (finding that breach of a non-compete agreement "per se supports an inference of irreparable harm . . . .") (citing *N.I.S. Corp.*, 724 F.2d at 710).

Second, Kanzoua's argument that Imo's Pizza can recoup its losses through money damages ignores the intangibility of some of Imo's Pizza's interests. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr. Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars."); *see also Osage Glass*, 693 S.W.2d at 75 ("The actual damage might be very hard to determine, and this is one reason for granting equitable relief."). The Court therefore finds that Imo's Pizza has shown that it will likely suffer irreparable harm if the Court does not grant its request for a TRO.

### C. *Threat of harm to Kanzoua*

Kanzoua contends that it would be severely harmed if forced to stop selling pizzas until the Court can hold a preliminary injunction hearing. Doc. [13] at 14. Kanzoua's counsel stated at the hearing that roughly 10 percent of Kanzoua's profits come from pizza sales, and that it would be forced to lay off four employees if forced to shut down its pizza operation. Doc. [13-1] ¶¶ 10, 24.

The Court is not unsympathetic to the hardship this Order will cause Kanzoua and its employees. However, the loss of revenue occasioned by this TRO is (a) short-term, if Defendants can demonstrate the superiority of their case at the preliminary injunction phase[3]; (b) fully compensable, unlike the potential damage to Imo's Pizza's brand and goodwill by continued violation of the Agreement; and (c) susceptible to mitigation by the sale of alternative food products, such as flatbreads. *See* Trans. 39:1-40:1 (Defense counsel agreeing that the sale of "flatbread" would be permissible under the Agreement, even though no one present could define the difference between pizza and flatbread with precision).

---

[3] At oral argument, Kanzoua's counsel clarified that the forecast layoffs were predicated on the long-term shut-down of operations, not the short-term shut down effected by a TRO. Trans. 31:19-32:8.

### *D. Public Interest*

Finally, the Court finds that the public interest favors the enforcement of the parties' valid contractual obligations. *See N.I.S. Corp.*, 724 F.2d at 710 ("[I]f these noncompete agreements are valid, the public interest calls for their enforcement."); *Gold v. Holiday Rent-A-Car Int'l, Inc.*, 627 F.Supp. 280, 285 (W.D. Mo. 1985) ("The public has an interest in enforcing covenants not to compete contained within valid contracts . . . .").

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Imo's Franchising Inc.'s Motion for a Temporary Restraining Order is **GRANTED in part** and **DENIED as moot in part**.

**IT IS FURTHER ORDERED** that Defendant, its officers, agents, servants, employees, attorneys, and any other person in active concert or participation with Defendant (including, but not limited to, Defendants Mike Jabbar, Adam Jabbar, Amira Jabbar, and Mirvet Jabbar, and their officers, agents, servants, employees, attorneys) are hereby enjoined from violating paragraph 21(c) of the Agreement by engaging in the sale of pizza at its St. Louis location.

**IT IS FURTHER ORDERED** that this Temporary Restraining Order shall remain in full force and effect until **9:00 a.m., Thursday, September 24, 2020**, at which time the Court will hear testimony and arguments on Plaintiff's Request for a Preliminary Injunction.

**IT IS FINALLY ORDERED** that Plaintiff Imo's Franchising, Inc., shall post a bond of **seven-thousand-five-hundred (7,500) dollars** with the Clerk of Court by **5:00 p.m., Wednesday, September 16, 2020**.

Dated this 14th day of September, 2020.

_____
UNITED STATES DISTRICT JUDGE